**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LISA HUTCHERSON,

            *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

            *Defendant.*

_____/

CASE NO. 17-cv-12395

DISTRICT JUDGE JOHN CORBETT O'MEARA

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (Docs. 14, 15)**

**I.      RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence

supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT**

**IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 14), be

**DENIED**, that the Commissioner's Motion, (Doc. 15), be **GRANTED**, and that this case

be **AFFIRMED**.

**II.     REPORT**

    **A.      Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of

Reference, this case was referred to the undersigned Magistrate Judge for the purpose of

reviewing a final decision by the Commissioner of Social Security ("Commissioner")

denying Plaintiff Lisa Hutcherson's claim for Supplemental Security Income benefits

("SSI"). (Doc. 4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 15).

On September 25, 2013, Plaintiff filed the instant application for SSI, alleging a disability onset date of September 17, 2013, later amended to June 12, 2015. (Tr. 35, 200-05). The Commissioner denied her claim. (Tr. 65-72). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on November 2, 2015 before ALJ Henry Perez, Jr. (Tr. 33-58).[1]  The ALJ issued a decision on March 15, 2016, finding Plaintiff not disabled. (Tr. 16-32). On June 6, 2017, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on July 25, 2017. (Doc. 1).

### B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

---

[1] Plaintiff attended a brief hearing on April 28, 2015, but it was adjourned to give Plaintiff a chance to acquire counsel and undergo consultative examinations. The November 2015 hearing, therefore, contains the most relevant testimony to the claim at issue. (Tr. 59-64).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically

determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241

(citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated

regulations that provide for the payment of disabled child's insurance benefits if the

claimant is at least eighteen years old and has a disability that began before age twenty-

two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically

determinable physical or mental impairment (expected to last at least twelve months or

result in death) that rendered her unable to engage in substantial gainful activity. 42

U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for

evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled

under the Act. (Tr. 16-32). At Step One, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since September 17, 2013, the application date. (Tr. 21). At

Step Two, the ALJ concluded that the following impairments qualified as severe:

schizophrenia, affective disorder, personality disorder, and osteoarthritis of the knee.

(*Id.*). The ALJ also decided, however, that none of these met or medically equaled a

listed impairment at Step Three. (Tr. 21-22). Thereafter, the ALJ found that Plaintiff had

the residual functional capacity ("RFC") to perform light work, except

> requires a cane; limited to unskilled work but able to understand and carry
> out instructions and interact with public and coworkers as well as respond
> appropriately to routine changes.

(Tr. 22). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work. (Tr. 25). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 26-27).

### E.      Administrative Record

#### 1.      Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.      Administrative Hearing

##### i.      Function Report

Plaintiff filled out a Function Report, dated October 9, 2013, which appears in the administrative record. (Tr. 247-59). In it, she attributes her condition to knee issues, "bad eyes," and mental illness. (Tr. 247). She spent most days "looking at [the] T.V." and "laying around because of my condition in my knees." (Tr. 248). The aching in her knees kept her up at night. (*Id.*). She struggled at times putting her pants on or laying in the tub, but otherwise did not struggle with personal activities. (*Id.*). She occasionally cleaned and did laundry, but required a friend's help at times "[b]ecause my knees usually swell[] if on them to[o] long." (Tr. 50). She had no problems venturing outside, and remained able to drive. (*Id.*). She enjoyed watching television and did it "often enough." (Tr. 251). Her "personality changes" caused problems getting along with others. (Tr. 252). Prompted to mark abilities with which she struggled, Plaintiff marked: squatting, bending, standing,

walking, kneeling, stair climbing, following instructions, and getting along with others. (*Id.*). She paid attention and followed instructions "as much as I can," depending on "if I'm interested." (*Id.*). She did not handle stress or changes in routine well. (Tr. 253).

A Third-Party Function Report from Michael Jones, Plaintiff's boyfriend, also appears in the record. (Tr. 260-71). The information provided therein is nearly identical to that provided in Plaintiff's Function Report.

### ii.      Plaintiff's Testimony at the Administrative Hearings

Opening her testimony, Plaintiff confirmed that she was a forty-nine-year-old high-school graduate. (Tr. 36). She also obtained a certificate from "Detroit Business" in "data entry" in 2008. (Tr. 36-37). From 2012 to 2014, she worked as a home healthcare aide on a part-time basis, but stopped because "I have a real bad knee and foot. My knee continues to hurt, I can't stand on it too long. I can't even sit down too long. I'm in pain almost every day. I can't sleep. . . . I do take medications for it, but I don't like the medication because . . . I'll be off focus and it makes me feel in a way that I don't like to feel." (Tr. 38). The pain in her left knee was worse than in her right. (*Id.*). It felt "[l]ike a throb, . . . Sometimes I get to where it feels like a pin or somebody is hitting me, you know, going straight through the middle of my knees." (*Id.*). In other words, some days were worse than others. She could stand for "[a]bout ten minutes" before "I got to sit down again" for approximately twenty minutes. (Tr. 39). She would also elevate her leg above her waist to reduce the swelling, as her physical therapist had advised. (*Id.*). She could walk to the corner store near her house, but would need to rest on a fence for a few minutes on "the way home." (Tr. 42). Stairs also proved difficult. (*Id.*). She ranked the

knee pain, after medication, at a seven on a one-to-ten scale. (Tr. 43). When she was in pain and took her medication, it made her drowsy and she would reduce her activity to sitting and watching television. (Tr. 44). "I'll go into a doze, you know, I doze off. And I forget, I get blurry." (*Id.*).

Plaintiff also described suffering from depression. "I'm a loner now, you know . . . I like to be alone when I get in those moods because then sometimes I'll get angry for no reason, but that's because I'm in pain." (*Id.*). She was still in treatment at Detroit East Community Mental Health, but her depression medication made her groggy and lonesome. (Tr. 45). This attitude became so severe that she did not often associate with family. (Tr. 46). "And that's not good to me because I know my grandchildren and my kids, that they want to communicate, I can't do it. For one, I'm in pain and I got to take that medication, I don't want to deal with them. I don't want to be bothered with nobody, leave me alone." (*Id.*). She described her mood as that of a zombie. (Tr. 47). She used her cane when her knees hurt. (Tr. 50-51).

### ii.     The VE's Testimony at the Administrative Hearings

The VE began by classifying Plaintiff's past work: "As a cashier, this is a semi-skilled job with an SVP of 3. The physical demands, according to the *DOT*, are light, and she indicated in various documents that she performed this job at a medium level." (Tr. 53). The ALJ then posed his first hypothetical: "[T]his individual is able to understand, remember, carry out instructions; able to interact appropriately with the public, supervision, coworkers; and respond appropriate to usual work situations and changes in a routine work setting. If we put this individual at the unskilled level, could such a person

be expected to perform claimant's past relevant work?" (Tr. 53-54). The VE said such a person could not perform Plaintiff's past work because it was "semi-skilled," though other work in the national economy would be available, including at the light exertional level: "bakery worker" (with 900 regional jobs and 125,000 national jobs), "inspector" (with 1,100 regional jobs and 150,000 national jobs), and "mail clerk" (with 700 regional jobs and 100,000 national jobs). (Tr. 54).

The ALJ then presented the second hypothetical, featuring the same non-exertional limitations as the last one in addition to "the ability to understand, remember, carry out instructions; she's able to interact appropriately with public, supervision, coworkers; and respond appropriately to usual work situations and to changes in a routine work setting. And in addition to that, if we put her at, again, the light limitation of lifting 20 pounds occasionally and 10 pounds frequently; standing six hours, sitting six hours, walking six hours with the use of a cane; and putting this individual at the unskilled level. Could such a person be expected to perform claimant's past relevant work?" (Tr. 55). The VE indicated that such a person *could* perform Plaintiff's past work "per the *DOT*," but not "as performed" because "[s]he performed it at a medium exertional level." (*Id.*). The VE then changed his answer to 'no' per the *DOT* "because of the fact that it's semi-skilled." (*Id.*). However, "within these parameter," other work existed, including all the examples given for the first hypothetical. (*Id.*).

For the third hypothetical, the ALJ asked whether work would be available "if I find claimant's testimony to be credible and the exertional impairments described are supported by the medical evidence, is there a significant number of jobs existing in the

regional or national economy?" (Tr. 55-56). Such a person could still perform the inspector and mail clerk jobs described previously. If, in addition to her exertional impairments, the ALJ considered her non-exertional impairments to be similarly credible, then finding work in competitive employment would prove "impossible . . . ." (Tr. 57). Plaintiff's counsel then clarified with the VE that any one of Plaintiff's more severe alleged non-exertional impairments—*e.g.*, "the anger, [medication] side effects, focus problems," etcetera—would preclude competitive employment. (*Id.*).

### F.     Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527.

Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an

impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication .
        . . taken to alleviate . . . pain or other symptoms;

> (v)    Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff offers a narrow challenge to the ALJ's analysis. She notes that "the ALJ only posed a hypothetical to the VE that included a limitation to unskilled work." (Doc. 14 at ID 447). "However," she recounts, "the VE testified that the DOT does not address issues of focus, concentration, and being off task," any of which the VE indicated would

14

be enough to preclude employment. (*Id.* at ID 448) (referring to testimony at (Tr. 57)). In the instant case, Plaintiff avers that despite finding her to have moderate limitations involving concentration, persistence, and pace, the ALJ merely incorporated a restriction to unskilled work in his RFC, which "is inconsistent with a moderate limitation in concentration, persistence, and pace." (*Id.* at ID 448-49).

Plaintiff lifts this argument from *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). In *Ealy*, the ALJ adopted certain mental limitations prescribed by the claimant's doctor, but then failed to accurately portray those limitations in a hypothetical question to the VE, depriving the VE's testimony of any weight. *Id.* at 516-17. Unlike *Ealy*, this is not a case in which the ALJ relied on VE testimony as to an incomplete or inaccurate hypothetical. *See id.* at 516 ("The ALJ's streamlined hypothetical omitted [adopted] speed- and pace-based restrictions completely."). And as the Sixth Circuit later clarified, "hypothetical questions must incorporate only the limitations that the ALJ has accepted as credible." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436 (6th Cir. 2014). Indeed, Plaintiff does not challenge the ALJ's evaluation of her credibility—or his decision to accord significant weight to Dr. Boneff's finding that Plaintiff did not struggle with mental-health-based work limitations—both of which factored considerably into his determination that a simpler limitation to unskilled work would be sufficient. (Tr. 24-25). What remains of Plaintiff's argument, therefore, is a claim that limitation to unskilled work categorically fails to account for moderate limitations in concentration, persistence, and pace.

This Plaintiff cannot show. *See, e.g.*, *Tolles v. Comm'r of Soc. Sec.*, No. 12-CV-14771, 2014 WL 1329003, at *3 (E.D. Mich. Apr. 2, 2014) ("Several courts in this district have found that the terms such as 'simple, routine and unskilled' when accompanied by appropriate facts, can be sufficient to communicate in a hypothetical a moderate limitation in concentration, persistence, and pace."). Moreover, Plaintiff's bald insistence that a limitation to unskilled work does "not account for any limitations that involve concentration, persistence, and pace, such as meeting quotas, working at a consistent pace, or concentrating," (Doc. 14 at ID 448), remains unpersuasive without any attempt to point to evidence of such limitations. This is because Plaintiff's challenge, in actuality, attacks the content of the ALJ's RFC determination rather than his Step Five findings; establishing the existence of these restrictions remained her burden, and she has not met it here. *Accord Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, . . ."); *see, e.g.*, *Al-Saidie v. Comm'r of Soc. Sec.*, No. 16-10471, 2017 WL 3633126, at *6 (E.D. Mich. Feb. 24, 2017), *R. & R. adopted,* No. 16-10471, 2017 WL 2982275 (E.D. Mich. July 13, 2017) ("Plaintiff has not alleged or pointed to any evidence in the record to support more restrictive physical limitations than those set forth in the RFC. Without allegations or record evidence of more stringent functional limitations, plaintiff has not met his burden to demonstrate a need for a more restrictive RFC."); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate

limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."); *cf. Grandstaff v. Comm'r of Soc. Sec.*, No. 16-12724, 2017 WL 4251734, at *12 (E.D. Mich. Sept. 26, 2017) (upholding the ALJ's analysis because the claimant pointed to "no particular inconsistencies" between his analysis and the evidence).

In sum, Plaintiff's argument should not prevail, and as such, the Commissioner is entitled to summary judgment on this matter.

### H.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 14), be **DENIED**, that the Commissioner's Motion, (Doc. 15), be **GRANTED**, and that this case be **AFFIRMED**.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that

making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 9, 2018                                    S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 9, 2018                                    By s/Kristen Castaneda
                                                        Case Manager